## Zawacki, Appellant, v. Pennsylvania Railroad Company.

Argued March 25, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 201,

*John E. Evans, Sr.*, with him *Evans, Ivory & Evans*, for appellant.

*Bruce R. Martin*, with him *Dalzell, Pringle, Bredin & Martin*, for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 27, 1953:

This is an appeal from the refusal of the court below to take off a nonsuit entered in a trespass action for personal injuries and property damage, suffered by the plaintiff in a collision between the defendant's train and the plaintiff's truck. The nonsuit was entered on a finding that the plaintiff was "guilty of contributory negligence as a matter of law" and that plaintiff's proof fell "far short of the proof required to show wilful or wanton misconduct." We take the evidence in a light most favorable to the plaintiff, who must be given the benefit of every inference therefrom. Viewed in this manner the facts are: About 11:30 A.M. on a clear, dry day plaintiff was driving his 1½ ton dump truck, loaded with about 4 tons of rock, on Railroad Street in East Vandergrift. The double tracks of the defendant cross this street in an east-west direction. At the crossing where the collision occurred the tracks are straight for about 1500 feet in each direction. The approach to the track has an upgrade slope of 30°; the plaintiff stopped at the foot of the grade and looked to his right and left, but his view was limited to 200 feet. He proceeded in low gear and stopped one or two feet from the first rail of the set of tracks nearest to him. He then saw the train "about 600, maybe 700 feet away" approaching at a speed he estimated to be "about ten miles an hour or fifteen," and noted that it consisted of an engine, tender and caboose. He thought the train "was on the opposite set of tracks from the one it was riding on," and "figured I could beat it over." He attempted to make the crossing at about 4 to 6 miles per hour, but when his front wheels were at the second rail of the first set of tracks, the motor stalled for a reason unknown to him. At this

moment the train was about 200 feet away. He succeeded in starting the motor within "a half minute to a minute," but only went two or three feet when his truck was struck "right in the door" of the cab. He further testified there had been no whistle sounded nor bell rung on the locomotive. The plaintiff called the engineer who testified that he sat on the right side of the engine and ". . . we don't have our eyes just on the rails. We have our eyes generally in view of everything, everything ahead. Of course you get a glance, your vision is the rail and the crossing and the—you are looking at everything in general, not just one particular thing." He further testified that he did not see the plaintiff's truck until the collision. He applied emergency brakes when the fireman called out that there was a truck on the crossing. He testified that he was travelling at a rate of 20 to 22 miles per hour, and thinks he could have stopped in 100 feet after applying the brakes, there being a second lost in reaction. He was not contradicted and the plaintiff was bound by his testimony.

The recited facts leave no doubt that fair and reasonable persons would agree that the plaintiff was negligent. See *Davis v. Feinstein*, 370 Pa. 449, 452, 88 A. 2d 695. Therefore the plaintiff can succeed only if the defendant's employes were guilty of wanton misconduct.

". . . wanton misconduct is something different from negligence however gross,—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong:" *Kasanovich, Admrx. v. George et al., Trustees*, 348 Pa. 199, 203, 34 A. 2d 523. ". . . the cases in

which wanton misconduct was found to exist were those in which the tortfeasor *had actual knowledge* of a victim's peril but nevertheless pursued his tortious course with utter indifference to the outcome": *Engle v. Reider,* 366 Pa. 411, 418, 77 A. 2d 621 (Italics supplied). Therefore there is nothing in this case to bring the plaintiff within the protection of the rule as to wanton misconduct. The most that can be said is that the engineer's failure to see the truck was the result of careless inattention, thus convicting him of negligence. There is no evidence that defendant knew that plaintiff was in a position of danger. There were no proven facts to permit the jury to find that the "engineer, from the facts known to him, should have realized the imminent danger . . . and, with a conscious disregard of the consequences of his act, he operated his train and permitted it" to collide with the truck: *Turek v. Pennsylvania Railroad Company,* 369 Pa. 341, 85 A. 2d 845. The plaintiff relies upon *Peden v. B. & O. R.R. Co.,* 324 Pa. 444, 188 A. 586, but in that case the two railroad employes who denied having seen the children, though they were looking at the tracks, testified on behalf of the defendant, and the plaintiff was not bound by their testimony. In the present case the engineer was called by the plaintiff, who is bound thereby; and there was no evidence introduced which contradicted the positive statement that he did not see the truck. Unless the engineer was concentrating on the right rail of the track immediately in front of him, he could not possibly have seen the truck, and he had no reason to so concentrate his vision on the right rail of the track ahead of him. In the *Peden* case this Court held that "To impose responsibility in such a case it must appear not only that defendant's employees *could* or *should* have seen the boys, but that they *did* see them, with sufficient opportunity to act in the light of such observation. [citing cases]"

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

In my opinion the case of *Peden v. Baltimore & Ohio,* 324 Pa. 444, is controlling of the facts in the case at bar. There, the fireman on a railroad engine, which ran down two children on the railroad tracks, testified that from his place in the engine cab he was watching ahead, "as far as I could see." Although the children were necessarily within his vision as the train approached them, the fireman testified that he did not see them. This Court, speaking through our present Chief Justice STERN, said: "The jury did not have to accept Gravely's statement that he did not see the boys, because it is a well settled principle of law based on ordinary human experience that 'one cannot be heard to say that he looked and did not see when the facts show he must have seen': McMillan v. Penna. R.R. Co., 311 Pa. 163. So, in Cover v. Hershey Transit Co., supra, the motorman of the car involved in an accident testified that he did not see children on a trestle ahead of him until he was only 25 feet from them, but the Court held that the case was for the jury in view of the fact that the children were in plain sight on the trestle for a considerable distance away and there was testimony that the motorman was looking in that direction. In other words, while it is not sufficient to prove that defendant's employee *could* have seen *had he looked,* the inference may be drawn, and is indeed inescapable, that he *did in fact* see if he admits that he *did look* and if from the other testimony it appears that looking enabled him to see."

In that same case a brakeman testified that he was standing at the crossing and although he could see the railroad tracks on which the children admittedly were, he looked but did not see the children. As to this, Chief Justice STERN said: "Here, again, notwithstanding this denial, his admission justified the jury in finding that he saw."

How, then, in the instant case can there be any acceptance of the engineer's testimony that although he was looking ahead on an admitted straightaway he did not see the plaintiff's truck?

In the *Peden* case the train was moving at the speed of 5 miles per hour. In this case the engine-caboose was moving at an estimated speed of from 10 to 15 miles per hour. The engineer admitted on the witness stand that he could stop within a distance of 60 feet. At 15 miles per hour he could stop within 90 feet. Since the plaintiff's truck was stalled at the crossing for from one-half to one minute, the engineer, had he been attentive and alert, could easily have brought his engine-caboose to a halt before striking the plaintiff's vehicle. Even if he could not have come to a complete stop before reaching the crossing, he could have decelerated his approach so that the impact with the truck would have been far less violent than the one which resulted in the infliction of serious injuries to the plaintiff.

In the case of *Kasanovich v. George,* 348 Pa. 199, the decedent was run down by a street car while in plain view of the motorman. The trial court gave binding instructions for the defendant but this Court reversed the decision and sent the case back for trial, saying (again through Chief Justice STERN) : "Instead of giving binding instructions for defendant, the learned trial judge should have instructed the jury that, even if the motorman was grossly negligent, plaintiff, because of decedent's contributory negligence, cannot recover, but that such contributory negligence would not be a bar if the motorman was guilty of wanton misconduct, that is if he exhibited a reckless disregard for decedent's safety after observing his perilous position and realizing the danger involved in proceeding at a high rate of speed and without giving warning of his approach." 

The lower court, in ruling that there was no wanton misconduct on the part of the engineer, quoted from

*Sankey v. Young,* 370 Pa. 339 : " 'Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.' "

I filed a dissenting opinion in the *Sankey* case and I am still of the belief that wanton misconduct does not have to include "a willingness to inflict injury." A wilful injuring passes from wanton misconduct into outright criminality. "To the commission of a wilful tort, as, for example, assault and battery, contributory negligence is clearly not a defense." *Kasanovich v. George,* supra.

The accident in this case occurred at the Railroad Street crossing in East Vandergrift, a regularly established and recognized grade crossing, which the engineer could see 1,000 feet away. The plaintiff testified that when he arrived at the tracks the engine was from 600 to 700 feet distant. The engineer was thus alerted of a potential collision at that time. It was his duty from that moment forward to keep his eyes glued to the crossing and his hand on the brakes. His failure to respond to the obvious possibilities of the situation caused the crash.

When the engineer took the witness stand in court, being called for cross-examination by the plaintiff, he found himself riding the horns of a double dilemma. If he said he did not look while approaching a grade crossing, he would admit to a gross dereliction of duty; if he said that he looked and saw the truck but made no effort to avoid the collision, he would admit to a gross dereliction of duty. He thought to slide off the impaling horns by pleading a supernatural visitation which prevents open eyes from seeing what is directly before them. He said he looked but did not see the truck.

The law should not accept so palpable an invention. It is my opinion that the jury should have been permitted to decide, under all the circumstances, whether the action of the engineer in carrying his locomotive toward and into a vehicle astride the railroad tracks, does not constitute wanton misconduct, entitling the injured person to recover for his injuries.