Moss, Appellant, *v.* Reading Company.

Argued April 30, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*I. Irving Tubis,* for appellant.

*Richard P. Brown, Jr.,* with him *Ferdinand P. Schoettle, Jr.,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 20, 1965:

Plaintiff-appellant, administratrix of the estate of her deceased father, brought suit seeking to recover damages from defendant railroad for her father's death which resulted from injuries which he sustained when struck by one of defendant's trains.

The court below, sitting without a jury, entered a nonsuit at the close of plaintiff's evidence on liability. Plaintiff's motion to take off the nonsuit was refused. The court held, as a matter of law, that the engineman on defendant's train was not guilty of wilful or wanton misconduct. Because decedent was a trespasser on defendant's tracks and was guilty of contributory negligence, a finding of wilful or wanton misconduct was necessary in order to impose liability on defendant. See *Evans v. P.T.C.,* 418 Pa. 567, 212 A. 2d 440 (1965); *Geelen v. Pennsylvania R.R.,* 400 Pa. 240, 161 A. 2d 595 (1960). This appeal followed.

In assessing the propriety of the entry of a nonsuit, we are mindful that such a judgment should be

entered only in a clear case, and that the testimony must be read in the light most favorable to the plaintiff's case, giving her the benefit of all reasonable inferences flowing therefrom. See, e.g., *Cushey v. Plunkard*, 413 Pa. 116, 196 A. 2d 295 (1964); *Murray v. Siegal*, 413 Pa. 23, 195 A. 2d 790 (1963).

The accident occurred in daytime. Despite the fact that decedent was facing the train as it approached him, despite the fact that the headlight of the train was on full beam due to drizzling weather, and despite the fact that the train's engineman sounded several warning whistles, decedent walked diagonally toward the train across two other tracks on the roadbed. Instead of stopping at the second track, as the engineman expected he would, decedent continued across the track on which defendant's train was traveling and was struck just as he had crossed that third track.

Other than decedent, there was but one witness to the accident, the engineman. The engineman, called by plaintiff, testified that he first saw decedent approximately 1,500 feet ahead of him and across the roadbed. The train was traveling at 50 miles per hour. He had just begun to brake the train in his usual manner in preparation for stopping at the next station.[1] Decedent started to cross the tracks and the engineman blew the whistle of the train to warn of its approach. When decedent continued to traverse the tracks, the

---

[1] Appellant contends that this testimony, elicited on cross-examination by defendant, contradicted the engineman's testimony on direct examination. Since we are to view the evidence in the light most favorable to plaintiff, appellant contends that we should not accept the engineman's testimony that he had begun normal braking procedures. We cannot agree. The engineman's testimony on direct examination was obviously directed toward his application of the emergency brake and in no way precluded the fact that he had already begun to brake for the next station. His testimony on cross-examination regarding this matter in no way conflicted with his testimony on direct examination.

engineman again blew his whistle but, thinking that decedent would stop at the center track and let the train pass, did not apply his emergency brake. Only when decedent stepped off the center track and headed for the track on which the train was traveling did the engineman apply his emergency brake. Such application was not in time, however, to avoid striking decedent.

The question for our determination is whether it was proper for the court below to decide, as a matter of law, that the engineman was not guilty of wilful or wanton misconduct. After a careful review of the record in this case, and viewing the evidence in a light most favorable to the plaintiff, as we are bound to do in cases of this nature, we are compelled to conclude that a nonsuit at the close of plaintiff's evidence on liability was justified.

In clarifying the definition of wanton misconduct, we noted in *Evans v. P.T.C.*, 418 Pa. 567, 212 A. 2d 440 (1965), that wanton misconduct " 'means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences . . . .' Prosser, Torts §33, at 151 (2d ed. 1955)."

Appellant does not claim that the engineman should have or could have done more than apply the emergency brake at the time he did. Appellant does contend, however, that the engineman should have realized at an earlier point that decedent was in a position of peril and should have invoked measures at that time to avoid the accident. The crucial point, therefore, is whether the court below erred in holding, as a matter of law, that decedent had not reached a position of

peril until he stepped from the center tracks heading for the track on which defendant's train was traveling.

When the engineman first saw decedent, decedent was two tracks away on the opposite side of the road-bed.[2] Under the circumstances of this case, it is impossible to conceive of a reasonable man concluding that decedent was, at that point, in a perilous position, imposing upon the engineman a duty to take emergency measures. The engineman at that time was applying the brakes as he ordinarily did prior to coming to a station stop and cannot be held guilty of wanton misconduct for doing no more than sounding a warning whistle.

We must determine, then, whether, at any time prior to stepping from the center track, decedent could be found to have been in a position of peril which the engineman should have recognized and whether, by merely sounding warning blasts from the train's whistle, the engineman manifested a reckless disregard of the existing danger and peril. We conclude not. The engineman had every right to believe that a man, walking diagonally across the tracks toward an oncoming train with its headlight full beam and emitting warning whistle blasts, would stop at the center track, letting the train pass, rather than walk directly into its line of travel. Although the engineman testified that decedent made no apparent reaction to his warning whistles, that fact is not sufficient to have given the engineman reason to believe that the warnings would have no effect on decedent's conduct and that decedent would place himself in a position of peril. It was not until decedent stepped off the center track that the engineman could reasonably have suspected that

_____

[2] This situation is clearly distinguishable from the situation where an engineer sees a person or strange object ahead of him on the track on which he is traveling. Compare *Evans v. P.T.C.*, 418 Pa. 567, 212 A. 2d 440 (1965) ; Restatement (2d), Torts, §336, illus. 3 (1965).

decedent was in a perilous position. It was at that point that the emergency brake was applied. The mere fact that this action was too late to avoid the accident can in no way detract from the fact that the engineman took reasonable care to avoid the accident the minute he realized that decedent was in a position of peril.

We conclude, therefore, that the court below properly refused to remove the nonsuit.

Judgment of nonsuit affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

As I said in my opinion in *Evans v. PTC*, 418 Pa. 567, once the engineman knew or should have known of the decedent-trespasser's presence (although there is no duty to anticipate such presence) the only question regarding defendant's duty is whether the engineman acted reasonably under all the circumstances. Here there is no question about the engineman's knowledge and, in my opinion, due to his recognition of decedent's obliviousness to warning, the reasonableness of the engineman's conduct is not a question that can be decided on a motion for nonsuit. Accord: Illustration 3 to §336 of the Restatement, Torts.

I dissent.

Mr. Justice MUSMANNO joins in this dissenting opinion.