543 A.2d 590

**John A. LEWIS, Administrator of the Estate of Mark E. Lewis, Deceased, on Behalf of the Estate of Mark E. Lewis, and John E. Lewis, Administrator of the Estate of Mark E. Lewis, Deceased, on Behalf of the Next of Kin of Mark E. Lewis, Deceased, Appellants,**

v.

**Charles B. MILLER.**

Superior Court of Pennsylvania.

Argued March 16, 1988.

Filed July 1, 1988.

516

Keith M. Pemrick, Franklin, for appellants.

Louis C. Long, Pittsburgh, for appellee.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

TAMILIA, Judge:

Appellant, administrator of the estate of Mark E. Lewis, appeals judgment entered on September 3, 1987 based on the grant of compulsory non-suit against appellants.

This unfortunate action exemplifies the tragic and fully foreseeable consequences of racing on our public highways. Just before midnight on October 28, 1983, Mark Lewis agreed to pit his 1982 Pontiac Firebird TransAm against Charles Brian Miller's Camaro Z–28, by racing up a steep

hill on U.S. Route 322 in Clarion Township, Clarion County.[1] As might be expected, the race concluded, not with a winner, but instead, with a fatality, as the Camaro Z–28 became airborne, clipping off the tops of pine trees some seven feet high, finally coming to rest against a camping trailer, and the TransAm skidded and rolled up against a stone wall. Mark Lewis, the 23–year old driver of the TransAm, was ejected from the car and later died, as a result of a fractured skull and broken neck, en route to the hospital.

Appellant filed a complaint in trespass on May 16, 1984 alleging the direct and proximate cause of the accident between decedent's TransAm and appellee's Camaro to be the "careless, negligent, wanton, reckless grossly negligent" operation of the auto operated by the appellee. Appellant sought damages on behalf of the estate for loss of wages and earnings and accumulations during the natural life expectancy of the decedent, and for pain, suffering and inconvenience sustained by decedent, as well as loss of property for the damaged automobile. On behalf of the next of kin of decedent appellant sought damages for loss of his companionship and also loss of his earnings and income. The case proceeded to trial on January 27–28, 1987.

Two witnesses, Millene Childs and Lori Switzer, present with the decedent and appellee shortly before the accident, testified the two young men had agreed to a race (N.T., 1/27/87, pp. 40, 50). Switzer said the men started the race at the bottom of a hill (N.T. at 50). Trooper Morosky of the Pennsylvania State Police, who investigated the accident, described the scene as a steep inclined hill with a sharp right hand curve, containing two eastbound lanes for traffic proceeding up the hill and one westbound lane for downhill traffic (N.T. at 8). The trooper testified that as the men

**1.** The parties agree the two young men involved, decedent Mark Lewis and appellee Charles "Brian" Miller, were engaged in a high-speed race or drag race at the time of the accident. *See* 75 Pa.C.S.A. § 3367, **Racing on highways.**

had proceeded eastbound with Lewis in the inner lane, Miller encountered a slow-moving vehicle in the outer lane causing him to swerve to his left to avoid hitting that vehicle. The path of Lewis's TransAm was cut off by Miller, causing him to swerve left, skid and hit a stone wall. As noted above, Lewis was thrown from the vehicle and died as a result of his injuries (N.T. at 60–62). Trooper Morosky estimated the traveling speed of the two vehicles to have been 75 m.p.h. at the time of the incident, although the hill area has a posted speed limit of 45 m.p.h. (N.T. at 25). He also testified each vehicle left about 200 to 220 feet of skid marks on the road.

The parties stipulated that shortly after his death decedent's blood alcohol level was .169 percent; appellee's blood alcohol was .17. At the close of plaintiff's case, defendant-appellee moved for compulsory non-suit, which the trial judge granted.

On appeal, the decedent's administrator contends the court erred in granting Miller's motion for compulsory non-suit. He urges the evidence does not unequivocally establish the decedent desired the accident to occur, that he realized it was substantially certain to occur, or that he actually perceived the risk that appellee-defendant would drive his car in such a manner as to force him from the road. Instead, he argues the evidence would establish both drivers were negligent but the immediate cause of the accident was the defendant's sudden lane change which forced the decedent from the roadway.

Additionally, appellant contends the jury should have been permitted to decide what type of misconduct was the immediate cause of the accident and to then allocate the relative fault between the two parties. He says merely because it is inappropriate to compare wanton and willful misconduct by a defendant against simple negligence of a plaintiff, see *Krivijanski v. Union R.R. Co.*, 357 Pa.Super. 196, 515 A.2d 933 (1986), does not preclude the court from

comparing equal levels of misconduct where both parties may be guilty of wanton or willful misconduct.

Our standard of review of the grant of non-suit is found in *Speicher v. Reda,* 290 Pa.Super. 168, 434 A.2d 183 (1981):

> On appeal from a compulsory non-suit the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiff's favor. *A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. Paul v. Hess Brothers,* 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973) (citations omitted). In trespass case, a plaintiff need not exclude every other reasonable accident. "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability." *Jones v. Treegoob,* 433 Pa. 225, 230, 249 A.2d 352, 355 (1969).

*Id.,* 290 Pa.Superior Ct. at 171, 434 A.2d at 185 (1981) (emphasis in original) quoting *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 135, 359 A.2d 822, 825 (1976). *See also Baker v. Township of Mt. Lebanon,* 98 Pa. Commw. 422, 512 A.2d 71 (1986).

█ In the January 28, 1987 Opinion the trial judge found, as a matter of law, the actions of both parties in this case were wanton conduct. We agree. In *Krivijanski, supra,* we outlined the meaning of wanton conduct in Pennsylvania as follows:

> Wanton conduct has been defined as "something different from negligence, however gross, different not merely in degree but in kind and evincing a different state of mind on the part of the tort feasor." *Kasanovich v. George,* 348 Pa. 199, 203, 34 A.2d 523, 525 (1943); *Zawacki v. Pennsylvania Railroad Company,* 374 Pa. 89, 97 A.2d 63 (1953); *Geelen v. Pennsylvania Railroad*

*Company,* 400 Pa. 240, 161 A.2d.595 (1960); *Stubbs v. Frazier,* [308 Pa.Super. 257, 454 A.2d 119 (1982) ] *supra.* "Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." *Kasanovich, supra,* 348 Pa. at 203, 34 A.2d at 525. Wanton misconduct

> ... means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences.

Prosser, Torts § 33.at 151 (2d ed. 1955) cited in *Evans [v. Philadelphia Transportation Company,] supra* [418 Pa. 567] at 567, 212 A.2d [440 (1965) ] at 443; *Moss v. Reading Company,* 418 Pa. 598, 212 A.2d 226 (1965). *Antonace, supra. See also* 57 Am.Jur.2d § 102.

*Id.,* 357 Pa.Superior Ct. at 201–205, 515 A.2d at 936–37.

Both the decedent and the appellee clearly were engaging in wanton conduct when they agreed, after imbibing alcohol, to drag race on a dangerous blind curve. In fact, their conduct involved several acts which are so unreasonable that they have been deemed crimes by our legislature, *see, e.g.,* Driving under the influence of alcohol, 75 Pa.C.S. § 3731(a)(4); Racing on highways, 75 Pa.C.S. § 3367; Maximum speed limits, 75 Pa.C.S. § 3362; Reckless driving, 75 Pa.C.S. § 3714. Under the circumstances of this case, while these are per se violations of the law, the activities also show a conscious indifference for the actor's own safety and for public safety in general. The unreasonable character of the risk posed by racing on this particular blind curve, while legally intoxicated, was so obvious the decedent must necessarily have been aware of it, and was of such a magnitude it was highly probable that someone

would be injured if not killed, whether it be one of the young men involved or an innocent bystander.

■ The trial judge was correct in his observation that in going 75 m.p.h. in a 45 m.p.h. zone, the men found, as they rounded the curve, precisely what they could have anticipated, that is, a slower moving vehicle. Thus, we see no reason to disturb the trial court's determination that both men were engaged in wanton conduct. We cannot accept as reasonable the appellant's contention that the evidence could establish the immediate cause of the accident was the defendant's sudden lane change which forced the decedent from the roadway, since that was just one isolated action of the continuing wanton act of drag racing. Neither will we find that the issue of the degree of wantonness of each party should have been submitted to the jury for determination, since our legislature has not provided an act similar to the Comparative Negligence Act which would permit a jury to compare relative degrees of wantonness on the part of each party.

Judgment affirmed.

Concurring Statement by POPOVICH, J.

POPOVICH, Judge, concurring:

I join in the well-reasoned Opinion by Judge Tamilia. But I write separately to emphasize the egregious nature of this law suit that the casual reader may not perceive. As Judge Tamilia points out, the appellant was guilty of committing four separate crimes: drunken driving, drag racing, speeding and reckless driving, and yet he has the unmitigated temerity to demand financial redress for injuries received as a direct consequence of his wanton commission of those crimes. Shall we now award monetary verdicts in civil court to a robber for injuries he received in a thwarted attempt to rob a convenience store? And one wonders about the ethical standards of an attorney who would accept and prosecute such a case. In the name of justice, we corrupt it.