## Zazzera v. Roche

C.P. of Lackawanna County, no. 01-CV-2062.

*Jeffrey M. Kornblau* and *Lynn Sare Kornblau,* for plaintiffs.

*Eugene P. Feeney* and *Dominic J. Georgetti,* for defendants Roche and Delta Medix P.C.

*John Q. Durkin,* for defendant Marian Community Hospital.

NEALON, *J.,* December 10, 2001—The health care defendants in this medical malpractice action have filed preliminary objections seeking to dismiss the claims for punitive damages set forth in the complaint. Since the plaintiffs have alleged that defendant, James J. Roche M.D., erroneously operated on a healthy left carotid artery even though an earlier ultrasound demonstrated that there was critical stenosis of his patient's right carotid artery, they have adequately averred that Dr. Roche purportedly committed an unreasonable act in reckless disregard of a risk that was readily apparent on preoperative diagnostic testing. For that reason, their punitive damages claim will survive the pleadings stage of this lawsuit. However, the plaintiffs have not alleged that defendants, Delta Medix P.C. and Marian Community Hos-

pital, knew that Dr. Roche was operating on the wrong artery and nevertheless allowed that improper surgery to proceed forward. Inasmuch as the 1997 amendments to the Health Care Services Malpractice Act restrict a health care provider's vicarious liability for punitive damages to instances where "the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages," the plaintiffs have failed to state a claim for punitive damages against defendants Delta Medix P.C. and Marian Community Hospital. Therefore, the demurrer to plaintiffs' vicarious liability claim for punitive damages will be granted.

## I. FACTUAL BACKGROUND

According to the well-pleaded allegations of the complaint, Metro Dyshuk underwent a cerebral vascular ultrasound on July 23, 1999, which revealed 80 percent stenosis of the right internal carotid artery. As a consequence, defendant, James J. Roche M.D., of defendant Delta Medix P.C., scheduled Dyshuk for a carotid endarterectomy to be performed at defendant Marian Community Hospital on September 30, 1999. Despite the fact that the preoperative diagnostic testing disclosed "critical stenosis" of the *right* carotid artery, Dr. Roche performed "carotid endarterectomy surgery on the *left* side." Dyshuk asserts that he has suffered injuries attributable to the unnecessary surgery on his left carotid artery and that, in addition, he has been forced "to undergo a second carotid endarterectomy surgery on the right side with accompanying physical and emotional pain, suffering, morbidity, distress and scarring." (See plaintiffs' complaint, ¶¶7-12.)

Dyshuk commenced this malpractice litigation by the filing of a complaint on April 23, 2001. In Count I of the complaint, Dyshuk charges Dr. Roche with negligence for scheduling and performing a carotid endarterectomy on the wrong carotid artery and for failing to identify the correct surgical site prior to surgery. (*Id.,* ¶20.) Dyshuk also maintains that Delta Medix is liable for Dr. Roche's alleged malpractice under the doctrine of respondeat superior. (*Id.,* ¶¶18, 21.) Count II advances a vicarious liability claim against Marian for the actions of its staff and nurses in allowing the incorrect surgery to be performed and for failing to place the carotid ultrasound films in the operating room for use during the operative procedure. (*Id.,* ¶24.) A separate cause of action for corporate liability is set forth against Marian in Count III which avers that the hospital failed to: (1) properly supervise the physicians and staff working at the hospital; (2) implement and enforce compliance with appropriate policies and procedures; and (3) have adequate facilities and equipment available. (*Id.,* ¶28.) Count IV contains a consortium claim on behalf of Mary Dyshuk while Count V asserts an informed consent claim against Dr. Roche. (*Id.,* ¶¶31-33, 35-39.)

In Count VI of the complaint, the Dyshuks seek to recover punitive damages against Dr. Roche, Delta Medix and Marian and allege:

"(41) At all relevant times, the correct site for the carotid endarterectomy surgery was readily and clearly ascertainable by mere reference to the prior clinical symptoms of Mr. Dyshuk and carotid ultrasound films and report generated and held on the premises of Marian

Community Hospital; but such findings were willfully and recklessly ignored by the defendants.

"(42) In light of the clinical symptoms presented by Metro Dyshuk, as well as the findings appearing upon ultrasound study and report, the defendants' scheduling and performance of wrong-sided carotid endarterectomy was outrageous, willful and recklessly indifferent to the health and well-being of Metro Dyshuk and in conscious disregard of the risks of harm to Metro Dyshuk from the performance of wrong-sided surgery, especially in consideration of the age of Mr. Dyshuk.

"(43) By undertaking unnecessary and harmful surgery upon Metro Dyshuk in the face of evidence clearly indicating the correct surgical site, the defendants acted with reckless indifference to the health and well-being of Metro Dyshuk and in conscious disregard of the risks of harm to Mr. Dyshuk." (*Id.*, ¶¶41-43.)

On May 21, 2001, Dr. Roche and Delta Medix submitted a demurrer to the Dyshuks' punitive damages claim on the grounds that the allegations of the complaint are insufficient as a matter of law to substantiate such recovery. On June 6, 2001, Marian presented comparable preliminary objections based upon section 812-A(c) of the Health Care Services Malpractice Act, 40 P.S. §1301.812-A(c). The preliminary objections were originally scheduled for oral argument on September 27, 2001, but at the request of counsel for the Dyshuks, that argument was postponed to December 5, 2001. On December 4, 2001, the parties agreed to submit the preliminary objections for a decision based upon the parties'

memoranda of law and without the need for oral argument.

## II. DISCUSSION

### (A) *Standard of Review*

The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Romeo v. Pittsburgh Associates,* 787 A.2d 1027, 1030 (Pa. Super. 2001); *Oven v. Pascucci,* 46 D.&C.4th 506, 511 (Lacka. Cty. 2000). When ruling on preliminary objections, the court must accept as true all well-pleaded allegations set forth in the complaint, as well as all inferences reasonably deduced therefrom. *Milton S. Hershey Medical Center v. Commonwealth,* 2001 WL 1497665, *2 n.5 (Pa. Commw. November 27, 2001). However, we need not accept as true any conclusions of law, unwarranted inferences, argumentative allegations or expressions of opinion. *Allentown School District v. Commonwealth, Department of Education,* 782 A.2d 635, 638 (Pa. Commw. 2001); *Loff v. Granville,* 51 D.&C.4th 563, 567 (Lacka. Cty. 2001).

Preliminary objections may only be granted in cases that are clear and free from doubt. *McCullough v. Clark,* 784 A.2d 156, 157 (Pa. Super. 2001); *Kilmer v. Connors,* 102 Lacka. Jur. 871, 873 (2001). To be clear and free from doubt, it must appear with certainty that the law will not permit recovery by the plaintiff upon the facts averred. *Shumosky v. Lutheran Welfare Services of Northeastern Pennsylvania Inc.,* 784 A.2d 196, 203 (Pa. Super. 2001); *Sontag v. Ward,* 2001 WL 1464378, *1 (Pa.

Commw. November 20, 2001). If there is any doubt as to whether a preliminary objection should be granted, it must be resolved in favor of overruling the objection. *Atkinson v. Evans,* 787 A.2d 1033, 1034 (Pa. Super. 2001); *Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1268 (Pa. Super. 2001).

### (B) *Direct Liability for Exemplary Damages*

In the complaint, Dyshuk asserts that Dr. Roche is directly liable for punitive damages based upon his own conduct. Under section 812-A of the Health Care Services Malpractice Act, "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others," but "[a] showing of gross negligence is insufficient to support an award of punitive damages." 40 P.S. §§1301.812-A(a), (b). See also, *Williams v. Syed,* 782 A.2d 1090, 1096 (Pa. Commw. 2001) (in a medical malpractice action, "[n]either mere negligence, nor even gross negligence, shows sufficient culpability to justify a punitive damage award" inasmuch as the "[a]ssessment of punitive damages is proper 'only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others.' "). Willful or wanton conduct requires a state of mind in which the tortfeasor realizes the danger to the plaintiff and disregards it to such a degree that "there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." *Lewis v. Miller,* 374 Pa. Super. 515, 520, 543 A.2d 590, 592 (1988); *Stubbs v. Frazer,* 308 Pa. Super. 257, 260, 454 A.2d 119, 120 (1982). Reckless in-

difference "means that the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *McClellan v. HMO of Pennsylvania,* 413 Pa. Super. 128, 145, 604 A.2d 1053, 1061 (1992), *appeal denied,* 532 Pa. 664, 616 A.2d 985 (1992). The Superior Court of Pennsylvania recently addressed the degree of recklessness required to support a punitive damages claim in a malpractice action and stated:

"Additionally, in order for conduct to be considered reckless:

"*It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence* .... The actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent." *Hall v. Jackson,* 2001 WL 1506037, *8, ¶31 (Pa. Super. November 28, 2001). (emphasis in original)

The question of whether a physician's conduct rises to the level of willful, wanton or reckless behavior depends upon the particular circumstances of a case. Pennsylvania case law discussing the parameters of punitive damages claims in the context of malpractice cases reflects that the health care provider's deviation from the applicable standard of care must be so egregious as to evince a conscious or reckless disregard of a patent risk of harm to the patient. *Scott v. Plucknett,* 102 Lacka. Jur.

445, 450 (2001); *Charles v. Remick,* no. 97-CV-956, Mazzoni, J., at p. 11 (Lacka. Cty. October 9, 2001). See *e.g., Medvecz v. Choi,* 569 F.2d 1221, 1227-30 (3d Cir. 1987) (anesthesiologist who abandoned a patient on the operating room table and reportedly left the operating room for a lunch break without securing a suitable replacement could be liable for exemplary damages to a patient who suffered irreversible paralysis from an anesthesiology complication that developed during his absence); *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa. Super. 375, 383, 492 A.2d 1382, 1386-87 (1985) (evidence that emergency room physician allowed a Guillain-Barre syndrome patient with neurological paralysis to remain crying and immobile on the floor for two hours as the physician repeatedly stepped over him was sufficient to establish the requisite motive and reckless indifference for punitive damages); *Scott, supra* at 451 (allegations that the defendant obstetrician left the hospital grounds to return to her private office even though she knew that the patient's labor was not being properly monitored, blatantly ignored the advice of a consulting perinatologist regarding the need for an immediate Cesarean delivery, and inexplicably delayed the commencement of that recommended delivery for more than three hours despite obvious signs of fetal distress on the monitoring strips, adequately averred a claim for punitive damages); *Syslo v. Davis,* 102 Lacka. Jur. 210, 216-18 (2000) (punitive damages could potentially be awarded to a patient who was verbally berated by medical staff while she was recuperating from negligently performed surgery and addressed as an "alcoholic" and "whore"). *Wimer v. Macielak,* 47 D.&C.4th 364, 368-69 (Crawford

Cty. 2000) (surgeon's conduct in ignoring patient's communications about postoperative complications which caused paraplegia could constitute reckless indifference since it manifested a complete "disregard of the attempts to contact him, with knowledge of the postoperative dangers inherent in the plaintiff's recent back surgery . . . ."). Compare *Dean v. Community Medical Center,* 46 D.&C.4th 334, 345-46 (Lacka. Cty. 2000) (patient's mere allegations of nonfeasance for misdiagnosing a condition, improperly performing a surgical procedure and prematurely discharging the patient from a hospital were insufficient to establish wanton or reckless conduct); *Charles, supra* (contentions that physician prescribed Phenobarbital at a dosage that was six times greater than the plaintiff's normal dosage, failed to obtain a drug history from the plaintiff to ascertain prospective adverse reactions vis-à-vis other medications she was taking, and neglected to formulate an accurate diagnosis before medicating the patient "do not rise to the level of outrageous, wanton, or reckless conduct" to warrant a punitive damages claim); *Russo v. Connors,* no. 00-CV-1522, Mazzoni, J., at p. 10 (Lacka. Cty. November 13, 2001) (dismissing punitive damages claim which was predicated upon averments that physician failed to conduct appropriate testing and consider "well-documented risks and side effects of hormones" before administering hormone replacement therapy for a low testosterone level and loss of libido).

Dyshuk contends that Dr. Roche is potentially liable for punitive damages since he performed "wrong-sided" surgery on a healthy carotid artery rather than a stenosed one. (See plaintiffs' brief, p. 7.) Although no Pennsylva-

nia appellate court has considered the viability of a punitive damages claim under facts that are comparable to those present in the case sub judice, one federal district in Pennsylvania and appellate courts in other jurisdictions have concluded that operating on the wrong part of a patient's anatomy, standing alone, does not necessarily justify a punitive damages claim. See *Mason v. Dracos,* no. 4:CV-93-1139, McClure, J., at pp. 6-7 (M.D. Pa. July 26, 1994) (striking punitive damages claim and holding that "to recover against defendants on their claim of punitive damages, the Masons must prove that the defendants performed surgery on the wrong ankle with either the intent to cause harm or with reckless indifference to the harm likely to flow from their conduct" and "[n]othing in the record even remotely suggests that surgery was intentionally performed on the wrong ankle."); *Ciarlo v. St. Francis Hospital Inc.,* 1994 WL 713864, *4 (Del. Super. 1994) (citing 18 Del. C. §6855 which limits punitive damages in a malpractice case to injuries that are "maliciously intended" and reasoning that "[i]njuries shall not be considered maliciously intended . . . if the intended treatment is applied or omitted by mistake to or for the wrong patient or wrong organ."); *Feister v. St. Francis Hospital,* 1 Cal.Rptr.2d 150, 156 (Cal. App. 1 Dist. 1991), *review granted,* 4 Cal.Rptr.2d 764, 824 P.2d 570 (Cal. 1992), *review dismissed,* 13 Cal.Rptr.2d 53, 838 P.2d 781 (Cal. 1992) ("[e]ven a calamitous mistake, such as operating on the wrong patient or surgically extracting the wrong organ, will not justify exemplary damages unless clear and convincing evidence establishes a culpable state of mind."). However, the Dyshuks do not simply allege that Dr. Roche operated on the wrong or-

gan; rather, they aver that he knew from the results of Dyshuk's preoperative testing that his right carotid artery was stenosed, but not withstanding that fact, still proceeded to perform an endarterectomy on the left carotid artery.

Accepting as true the allegations of the complaint and affording Dyshuk the benefit of all reasonable inferences deducible from those averments, it is not clear and free from doubt that Dyshuk cannot possibly recover punitive damages from Dr. Roche. Dyshuk has alleged that Dr. Roche performed an unreasonable act (*i.e.,* an endarterectomy on a healthy artery instead of a stenosed artery) in disregard of a risk that was so easily perceptible from the ultrasound that he may potentially be regarded as having been aware of it. As such, Dyshuk has sufficiently averred that Dr. Roche's deviation from the standard of care manifested a reckless indifference to the safety of his patient. Accordingly, Dr. Roche's demurrer to Dyshuk's punitive damages claim will be denied.

### (C) *Vicarious Liability for Punitive Damages*

The Dyshuks also maintain that Delta Medix and Marian are vicariously liable for punitive damages in this case. In that regard, the Dyshuks do not allege that either Delta Medix or Marian knew of the reckless conduct in question (*i.e.,* surgery on the wrong site) but nonetheless allowed it to occur. On the contrary, Dyshuk merely argues that "[p]erforming surgery on the wrong side of the patient's body certainly can be interpreted by reasonable minds as a conscious indifference to the patient's rights and well-being." (See plaintiffs' brief, p. 11.)

While it is true that subsections (a) and (b) of section 812-A of the HCSMA are simply a codification of Pennsylvania case law, see *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 495, 587 A.2d 702, 705 (1991), section 812-A(c) reflects a significant departure from the common law governing a health care provider's vicarious liability for punitive damages. *Dean,* 46 D.&C.4th at 342-43; *Scott,* 102 Lacka. Jur. at 451. Under Pennsylvania decisional law, "there is no requirement that an agent commit a tortious act at the direction of his principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him." *Shiner v. Moriarty,* 706 A.2d 1228, 1240 (Pa. Super. 1998), *appeal denied,* 556 Pa. 711, 729 A.2d 1130 (1998). Indeed, our Commonwealth has expressly declined to adopt section 909 of the Restatement (Second) of Torts which precludes vicarious liability for punitive damages in the absence of some knowledge or authorization on the part of the principal. See *Dean Witter Reynolds Inc. v. Genteel,* 346 Pa. Super. 336, 348-49, 499 A.2d 637, 643 (1985), *alloc. denied,* 514 Pa. 639, 523 A.2d 346 (1987).

However, the 1997 amendments to the HCSMA created new standards for the vicarious liability of health care providers for exemplary damages and state:

"Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury *unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages.*" 40 P.S. §1301.812-A(c). (emphasis added) "Hence, with the advent of section 812-A and its injection of a scienter ele-

ment into the respondeat superior equation, a health care provider may not be vicariously liable for exemplary damages unless it had actual knowledge of the wrongful conduct of its agent and nevertheless allowed it to occur." *Dean,* 46 D.&C.4th at 344; *Scott,* 102 Lacka. Jur. at 452. As a result of the HCSMA's creation of a heightened standard of proof for such vicarious liability, a patient must now aver and establish that the health care principal was cognizant of the agent's willful, wanton or recklessly indifferent treatment *and* allowed that conduct to proceed unabated.

The Dyshuks' complaint is devoid of any allegation that Delta Medix or Marian knew that Dr. Roche was operating on the wrong carotid artery and nonetheless allowed that malpractice to take place. In their brief, the Dyshuks rely upon *Genteel* and other decisions which pre-date 40 P.S. §1301.812-A(c) and posit that "[i]t is well-settled that where the misconduct of the defendant supporting an award of punitive damages arises from the acts of the defendant's agent or employee acting within the course of their employment, punitive damages will be assessed vicariously." (See plaintiffs' brief, p. 12.) But following the adoption of the 1997 amendments to section 812-A(c) of the HCSMA, vicarious liability no longer arises automatically in every instance in which an agent engages in wanton or reckless conduct while acting within the scope of the agent's employment. Such liability may now attach only if the health care provider is aware of the agent's wanton or reckless care and still permits it to occur. Since the Dyshuks' complaint neglects to even make such an averment, Delta Medix and Marian cannot possibly be liable for punitive damages

under current Pennsylvania law and their preliminary objections will therefore be granted.[1]

## ORDER

And now, December 10, 2001, upon consideration of the preliminary objections of defendants, James J. Roche M.D., Delta Medix P.C., and Marian Community Hospital, in the nature of a demurrer and motion to strike, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

---

1. Delta Medix has also filed a motion to strike paragraph 20 of the complaint and argues that the Dyshuks should be required to identify those individuals, besides Dr. Roche, who purportedly acted as its actual or ostensible agents. (See Delta Medix's preliminary objections, ¶¶20-24.) See also, *Ideas Inc. v. Frankfurt Trust Co.,* 73 D.&.C.2d 272, 274 (Phila. Cty. 1975); *Dinger v. Market Street Trust Co.,* 7 D.&C.2d 674, 679-80 (Dauph. Cty. 1957). We have previously declined to strike malpractice allegations on the grounds that they are too generalized and have instead afforded the plaintiff a finite period of time to conduct discovery and provide greater specificity with respect to the averments in question. To that end, we have reasoned that "[s]uch an approach is particularly warranted in medical malpractice litigation where health care providers' handwritten notations, orders or entries are often indecipherable and must be interpreted by their authors before a plaintiff can fully ascertain the health care providers' diagnoses or prescribed courses of treatment, as well as the bases for the same." *Yanchick v. Tyler Memorial Hosp.,* 101 Lacka. Jur. 331, 335 (2000). For the same reason, the Dyshuks should be granted the opportunity to have the pertinent records interpreted by the defendants so that those putative agents can be identified via an amended complaint. Such a solution "protects a defendant from dilatory amendments on the eve of trial without resorting to the drastic measure of summarily dismissing general averments . . . at an embryonic state of the proceeding." *Id.*

(1) The preliminary objections of defendant, James J. Roche M.D. in the nature of a demurrer to plaintiffs' claim for punitive damages is denied;

(2) With regard to the allegation in paragraph 20 of the complaint that defendants, James J. Roche M.D. and Delta Medix P.C., acted individually "and through their agents, workers, nurses, clerks and staff" in their treatment of plaintiff, Metro Dyshuk, the plaintiffs shall be afforded 120 days from the date of this order within which to conduct discovery so as to enable plaintiffs to prepare and file a more specific pleading within 60 days of the completion of such discovery by identifying those agents, workers, nurses, clerks or staff who "acted in breach of the requisite standard of care and were negligent, careless and reckless in their examination, scheduling, care and treatment of Metro Dyshuk . . . .";

(3) If the plaintiffs fail to so amend paragraph 20 of the complaint within 180 days of the date of this order, the averment regarding unnamed "agents, workers, nurses, clerks and staff" of defendants, James J. Roche M.D. and Delta Medix P.C., who were allegedly negligent will be deemed stricken; and

(4) The preliminary objections of defendants, Delta Medix P.C. and Marian Community Hospital, in the nature of a demurrer to plaintiffs' claims of vicarious liability for punitive damages are granted and plaintiffs' claims for punitive damages against defendants, Delta Medix P.C. and Marian Community Hospital, are stricken.