## Arnold v. Leamy

C.P. of Lancaster County, no. CI-02-07685.

*William J. Gallagher,* for plaintiff.
*J. Michael Flanagan,* for defendant.

CULLEN, *J.,* July 19, 2004—In his motion for summary judgment, defendant, James L. Leamy,[1] seeks judgment in his favor on the ground that the deceased, John Randall Arnold, was engaged in wanton conduct at the time of his death and, therefore, the administratrix of his

1. Defendant's answer indicates that his true name is James S. Leamy. (Answer, ¶2.) Since the parties have not sought to amend the caption, the court will refer to defendant using the name by which he is identified in the complaint.

estate cannot recover damages in her wrongful death and survival action even if defendant was negligent in striking the deceased with his vehicle while the deceased was sitting on the roadway. Based upon a review of the evidence and the applicable law, the court concludes that defendant is not entitled to the relief requested. Accordingly, his motion for summary judgment will be denied.

## PROCEDURAL HISTORY

Plaintiff, Beth Arnold, administratrix of the estate of John Randall Arnold, deceased, commenced this wrongful death and survival action on September 5, 2002. On December 3, 2002, she filed her complaint alleging that defendant was careless, reckless and negligent when he struck the deceased, a pedestrian, with his vehicle and killed him.

Defendant filed an answer and new matter on December 18, 2002, to which plaintiff responded. The parties then engaged in discovery.

On February 24, 2004, defendant filed his motion for summary judgment, together with supporting documentation and a brief. Plaintiff filed an answer to the motion and a brief on March 22, 2004. The matter was thereafter assigned to the court for disposition.

## FACTUAL BACKGROUND

At approximately 5 a.m. on the morning of September 16, 2000, Ervin Martin had just turned from his driveway into the westbound lane of Laurel Road in Caernarvon Township, Lancaster County, Pennsylvania. (Deposition of Ervin Martin, July 28, 2003, pp. 5, 8.) He saw the deceased, who appeared to be drunk, in the

middle of Laurel Road. *Id.* at 5-6. Unsure what to do, Mr. Martin stopped his vehicle. *Id.*

Although his testimony is not completely clear, it appears that Mr. Martin first saw the deceased staggering on the road. *Id.* at 9-11. Mr. Martin observed the deceased trying to get up off the ground without success. *Id.* at 6, 10, 15. Immediately before being struck, the deceased was sitting up in the middle of the road "a little bit" in defendant's lane of travel facing on-coming traffic. *Id.* at 6, 11-12, 16. Mr. Martin saw the headlights of defendant's approaching vehicle and estimated it traveled about 200 yards before striking the deceased. *Id.* at 11.

Defendant was traveling east on Laurel Road. (Deposition of James S. Leamy, May 7, 2003, p. 10.) He saw Mr. Martin's vehicle stopped on the road. *Id.* at 14-15. He did not see the deceased sitting in the road until he was less than 20 feet from him. *Id.* at 15, 20. Defendant's vehicle struck the deceased, killing him. (Deposition of Ervin Martin, July 28, 2003, pp. 6, 16); (deposition of Trooper James Lynam, July 28, 2003, pp. 14, 20.)

The postmortem toxicology report indicated that the deceased had ingested cocaine and that he had a blood alcohol content of .16 percent. (Motion for summary judgment, ¶6; answer, ¶6.) The presence of alcohol and cocaine would have had a profound effect on the deceased's judgment, inhibitions and reaction times. (Motion for summary judgment, ¶7; answer, ¶7.)

There appears to be no dispute that approximately two hours before his death, the deceased was involved in an unusual incident on the Pennsylvania Turnpike. (Motion for summary judgment, ¶8; answer, ¶8.) After colliding

with the medial barrier and losing a driver's side tire, the deceased abandoned the 1988 Oldsmobile he was driving. *Id.* Prior to abandoning his vehicle, the deceased had traveled eastbound in the westbound lane of the turnpike for some distance. *Id.*

## DISCUSSION

Pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, after the pleadings are closed any party may move for summary judgment where (1) there is no genuine issue of material fact as to a necessary element of the cause of action or defense which would be established by additional discovery or expert report, or (2) after completion of discovery, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury. Pa.R.C.P. 1035.2.

"A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury." *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998). (citation omitted). "If the nonmoving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996)).

The court must view the record "in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992). (citation omitted)

The thrust of defendant's argument is that plaintiff is barred from recovery because the deceased was engaged in suicidal or wanton conduct at the time of his death. He cites the decision of the Superior Court in *Lewis v. Miller,* 374 Pa. Super. 515, 543 A.2d 590 (1988), in support of his position.

In *Lewis,* the administrator of the estate of a driver killed in a drag race sued the other racer. *Id.* In addition to racing on the highway, both drivers were under the influence of alcohol.[2] *Id.* At the conclusion of the plaintiff's case, the trial court entered a compulsory nonsuit. *Id.* The plaintiff took an appeal to the Superior Court. *Id.*

On appeal, the Superior Court affirmed, concurring with the trial court that both participants had been engaged in wanton conduct. Under Pennsylvania law,

"Wanton conduct has been defined as 'something different from negligence, however gross, different not merely in degree but in kind and evincing a different state of mind on the part of the tort-feasor.' . . . 'Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff,

---

2. The deceased's blood alcohol level was .169 percent while that of the other driver was .17 percent. Both vehicles were estimated to be traveling at 75 miles per hour in a 45 mile-per-hour zone at the time of the fatal crash.

though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.' . . . Wanton misconduct

"means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences." *Id.* at 519-20, 543 A.2d at 592.

Under such circumstances, the plaintiff was precluded from recovery. The Superior Court found no merit to the proposition that the jury should have been permitted to weigh the degree of wantonness of each party under the Comparative Negligence Act.[3] *Id.*

In this case, the parties agree that the Comparative Negligence Act cannot serve to provide a means of recovery if the deceased's actions amount to willful or wanton misconduct. Where willful or wanton misconduct is involved, comparative negligence should not be applied since such conduct on the part of one party may not be compared with the negligence of another without ignoring the clear distinction between these different types of conduct. *Krivijanski v. Union Railroad Company,* 357 Pa. Super. 196, 515 A.2d 933 (1986).

Wanton misconduct has already been defined. It is not, however, interchangeable with willful misconduct. *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965). Willful misconduct means that the actor desired to bring about the result that followed, or

3. 42 Pa.C.S. §7102(a).

at least that he was aware that it was substantially certain to ensue. *Id.*

Intoxication does not preclude a determination that a party engaged in wanton conduct. *Lewis v. Miller,* 374 Pa. Super. 515, 543 A.2d 590 (1988).

Based upon the current record, the court cannot say with the requisite certainty that as a matter of law the deceased was engaged in wanton conduct at the time of his death. The circumstances in *Lewis* are readily distinguishable.

In *Lewis,* the deceased, although legally intoxicated, was able to make a conscious decision to engage in a drag race with his companion and to maintain control of his automobile at 75 miles per hour until the other driver moved toward him. This was sufficient to allow the Superior Court to conclude that the nature of the conduct in which he engaged, and the risk entailed, was so obvious that the deceased must necessarily have been aware of it, yet nevertheless persisted.

Mr. Arnold, on the other hand, lacked basic physical coordination. He was staggering and unable to get up. He was sitting in the middle of the road, slightly in defendant's lane of travel, at the time he was struck. His conduct was certainly negligent, but on the evidence presented it cannot be said to be wanton.

His actions on the Pennsylvania Turnpike approximately two hours earlier do not mandate a different conclusion. The evidence indicates that the deceased was traveling eastbound in the westbound lane of the turnpike, struck the medial barrier losing a tire and thereafter abandoned the vehicle. Again, this is clearly sufficient to establish negligence had anyone been injured by

his conduct. Whether the deceased was under the influence of alcohol and/or cocaine at the time of these events cannot be determined from the record. In the absence of a more compelling evidentiary connection, the deceased's actions two hours earlier do not justify a finding that his conduct at the time of his death was wanton.

Defendant in his argument describes the deceased's conduct as suicidal. The court will treat this as a claim that the deceased's conduct was willful. While certain facts may lend themselves to this interpretation, the evidence viewed in the light most favorable to plaintiff does not warrant this conclusion. Defendant's characterization is based upon his impression of the deceased's actions. There is no direct evidence of the deceased's state of mind or any testimony from a neutral witness which would support the conclusion that the deceased was suicidal. The evidence viewed in the light most favorable to the nonmoving party indicates only that the deceased was intoxicated to the extent that he lacked physical coordination and was unable to get up. The claim that the deceased's conduct was suicidal or willful lacks sufficient evidentiary basis to support a motion for summary judgment.

Based upon the foregoing analysis, the court enters the following:

## ORDER

And now, July 19, 2004, the motion of defendant, James L. Leamy, for summary judgment is denied.