J-A29033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADAM MAPSTONE, INDIVIDUALLY AND AS PARENT AND LEGAL GUARDIAN OF TREVOR MAPSTONE, A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | No. 523 WDA 2024 |
| MATTHEW HARTMAN | : : : | |

Appeal from the Order Entered April 3, 2024
In the Court of Common Pleas of Westmoreland County
Civil Division at No. 1972 of 2022

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: MARCH 25, 2025**

Adam Mapstone (Appellant), individually and as parent and legal guardian of Trevor Mapstone, a minor, appeals from the trial court's order granting summary judgment in favor of Appellee, Matthew Hartman (Hartman).  We affirm.

On November 3, 2022, Appellant filed a complaint alleging Hartman's "negligence pertaining to an incident that occurred on April 28, 2022."  Trial Court Opinion (TCO), 4/3/24, at 1.  Appellant's son, 16-year-old Trevor Mapstone (Trevor), was skateboarding in a residential neighborhood.  *Id.* Trevor "was riding his skateboard toward [an] intersection[,]" and "Hartman was driving his truck toward that same intersection."  *Id.*  The trial court explained:

When Trevor saw [Hartman's] truck, he attempted to avoid a collision, but still collided with the side of [Hartman's] truck and suffered injuries. [Appellant] alleged that [Hartman] "struck Trevor at a high rate of speed, when [he] failed to properly stop, slow down, brake, yield, and/or otherwise change direction." *See* [Appellant's] Complaint, [11/3/22, at ]¶[]9. [Hartman] filed an Answer, New Matter, and Counterclaim denying that he was negligent and seeking compensation for damage to his truck as a result of the collision.

*Id.* at 1-2.

*EVIDENCE OF RECORD*

The parties engaged in discovery, which included Trevor's deposition, Hartman's deposition, a report from Hartman's expert, a police report, and photographs and video of the accident scene. *See id.* at 2.

Trevor admitted he "rode through a stop sign." Motion for Summary Judgment, 1/10/24, Exhibit A (N.T. Trevor's Deposition, 10/18/23, at 25). He also conceded that Hartman "did not have a stop sign." *Id.* Hartman's counsel asked Trevor:

Q. No one else was with you, right?

A. No, sir.

Q. Did you say that you had done that before, ridden a skateboard down that hill, or you had not?

A. Not that particular hill, no.

Q. Okay. There are no brakes on your skateboard, right?

A. No, sir.

Q. [W]hen you made the decision to start downhill[, had] you walked up halfway, or did you get up there some other way?

A. [I] walked up about halfway.

Q. When you made the decision to skateboard down the hill on the road, how did you plan to stop at the stop sign if you didn't have any brakes, or did you not plan to stop at the stop sign?

A. I did not plan to stop at the stop sign.

Q. So when you made the decision to skateboard down the hill, you planned on just going straight through the stop sign without stopping?

A. Yes, sir.

Q. And how far were you intending to travel down [the s]treet through that intersection after you blew the stop sign?

A. Undetermined. I'm not certain.

Q. Why would you plan to run through a stop sign?

A. Because … it wasn't a very busy time of day, and I was on a side street, and I was not aware of the legalities involved with skateboarding on the street.

Q. Well, you've already told us you were aware you had to stop at the stop sign. Everyone knows that, right? You've already said that.

A. Yeah.

*Id.* at 38-39.

Hartman described the weather on the day of the accident as "sunny" and "clear." Motion for Summary Judgment, 1/10/24, Exhibit B (N.T. Hartman's Deposition, 8/16/23, at 54). He testified that the roads were dry as he drove through the neighborhood, which had a posted speed limit of 25 miles per hour. *Id.* at 54, 79-80. Hartman recounted having "the right of way" as Trevor was "coming downhill on [Hartman's] right." *Id.* at 84-85. He stated that Trevor "hit my truck, I didn't hit him." *Id.* at 86. Appellant's

counsel asked Hartman if a "collision" occurred, and Hartman repeated, "He hit my truck."[1] *Id.*

Hartman testified that he did not see Trevor before Trevor hit the right front fender of his truck. *Id.* at 90. The incident was recorded by a neighbor's security camera, and Appellant's counsel showed Hartman the video recording. *Id.* at 33, 90-100. Appellant's counsel asked:

Q. [W]hen you review that video, am I correct that it shows Trevor trying to avoid the impact?

A. He jumps off his skateboard.

Q. He tried to stop, and do that in part by jumping off the skateboard, didn't he?

A. Yeah, he was out of control coming down the hill.

*Id.* at 90.

Appellant's counsel asked Hartman, "[Y]ou can at least see somewhat to your right up [the s]treet, can't you?" *Id.* at 91. Hartman answered, "[A]s we know from the video, there was a car turning in front of me. So there's no way I would have seen Trevor, if that's what you're asking." *Id.* at 92. Hartman stated that he "was looking all around" and "never saw" Trevor. *Id.* at 93. Appellant's counsel continued to question Hartman:

_____

[1] Hartman's counsel objected, stating, "[A]sked and answered. You just didn't like his answer." *Id.* When Appellant's counsel continued to ask about a "collision," Hartman's counsel said, "[N]ow you've asked it a third time. Objection, asked and answered." *Id.* Nonetheless, Hartman's counsel advised Hartman, "You can answer it again." *Id.*

Q. Sir, you agree with me, had you braked or slowed down you would have had time to see Trevor?

A. I might have killed Trevor because I would have hit him with the front of my vehicle. I never saw Trevor.

*Id.* at 104-05.

Hartman stated that after the accident, he "went right to [Trevor]." *Id.* at 113. According to Hartman, Trevor "was trying to get up and wanted to leave and I looked down and saw his ankle. Something was wrong with his ankle, and I said, hey, buddy you're injured[,] you need to stay here." *Id.* at 114. Hartman testified:

I believe I called 911. If I didn't call 911[,] I either had his friend or someone that came out afterward call 911. I made sure that 911 was called. … I told them that I was involved in a crash. I told them the location and what I needed, the police and EMS.

*Id.* at 115-16. Hartman estimated he was at the scene for "a half hour, 45 minutes," and told responding officers he "was going under the speed limit" and "probably going 20-25 miles an hour." *Id.* at 107, 133.

Hartman produced the only expert report. *See* Motion for Summary Judgment at ¶ 32. The report is authored by Robert T. Lynch, P.E., a licensed professional engineer and forensic consultant. *Id.* at Exhibit E (Expert Report, 12/14/23, at 1). Lynch analyzed "the Commonwealth of Pennsylvania Police Crash Report and surveillance video of the incident," and provided his opinion "within a reasonable degree of engineering certainty." *Id.* Lynch stated:

The skateboarder does not stop at the stop sign[, and] enters the intersection and impacts the right-side front of [Hartman's truck]….

… Based on [] observations from the surveillance video, as well as [] independent research into the [make and model of the truck], it appears that the [truck was traveling at] an average speed of approximately 24 miles per hour.

… Hartman applied the brakes … at the approximate point of impact.

The speed limit on [the s]treet was 25 miles per hour. The physical evidence in this matter establishes that _the [truck] was traveling below the speed limit as it entered the intersection_.

**_Id._** at 2 (italics and underline in original).

*PROCEDURAL POSTURE*

On January 10, 2024, Hartman filed a motion for summary judgment seeking dismissal of Appellant's complaint and damages on his counterclaim. The trial court heard argument on the motion on March 21, 2024. On April 3, 2024, the court issued an order and opinion granting summary judgment, dismissing Appellant's complaint, and awarding Hartman $1,812.18 for damages to his truck.

On April 30, 2024, Appellant filed a timely notice of appeal and court-ordered concise statement of errors pursuant to Pa.R.A.P. 1925(b). On May 28, 2024, the trial court issued an order expressing its reliance on the opinion it issued with the order granting summary judgment.

On September 18, 2024, Hartman filed an application with this Court seeking costs and damages pursuant to Pa.R.A.P. 2744 (Further Costs. Counsel Fees. Damages for Delay) and Pa.R.A.P. 2751 (Applications for Further Costs and Damages). Appellant filed a response on October 4, 2024. On October 11, 2024, this Court entered a *per curiam* order deferring

disposition to this panel. Before considering Hartman's request, we address the issues raised by Appellant.

Appellant presents two questions for review:

1. Whether, when viewing the evidentiary record in the light most favorable to [Appellant] and resolving all doubts against the moving party, the trial court abused its discretion or erred in concluding that no genuine issues of material fact existed as to whether [] Hartman was negligent?

2. Whether, when viewing the evidentiary record in the light most favorable to [Appellant] and resolving all doubts against the moving party, the trial court abused its discretion or erred in concluding that no genuine issues of material fact existed as to whether [Trevor] was reckless as a matter of law?

Appellant's Brief at 5.

*DISCUSSION*

"Our scope of review of a trial court's order granting summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." **Shellenberger v. Kreider Farms**, 288 A.3d 898, 905 (Pa. Super. 2023) (citation omitted). As an appellate court, our responsibility is to determine whether the record either establishes that material facts are undisputed, or contains insufficient evidence of facts for a *prima facie* cause of action. **Id.** (citing **Truax v. Roulhac**, 126 A.3d 991, 997 (Pa. Super. 2015)). In particular:

> "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." **Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citation omitted), *appeal*

*denied*, ... 65 A.3d 412 ([Pa.] 2013).  Further, "failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.*

*Id.*

### 1. Negligence

In his first issue, Appellant argues that "evidence supported all necessary elements of a negligence cause of action."  Appellant's Brief at 10.  "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009) (citation omitted).  To prove negligence, a plaintiff must demonstrate:

> (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*, a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

*Shellenberger*, 288 A.3d at 906 (citing *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 654 (Pa. Super. 2002)).

In this case, the trial court determined that Appellant failed to establish the second element, *i.e.*, Hartman's breach of duty.  "The existence of a duty is a question of law for the court to decide." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (citations omitted).  We have recognized "the well-established rule that negligence cannot be found where the law does not impose a duty." *Sprenkel v. Consol. Rail Corp.*, 666 A.2d 1099, 1102 (Pa. Super. 1995).

- 8 -

Appellant claims the trial court erred in determining that he "failed to raise a genuine issue of material fact as to the essential element of breach of duty." *See* TCO at 6. Appellant asserts that a jury could find Hartman "breached a duty to ensure his vehicle was under control at all times and that it was safe to proceed through the intersection." Appellant's Brief at 10. He argues:

> [A jury] could find [Hartman] was driving too fast when he entered the intersection, given it was controlled by crosswalks and contained a sign explicitly warning of the danger of children, like Trevor, playing in the area. It could find he failed to look to his right, and failed to see Trevor on the skateboard, who, as documented on the available video, was clearly visible, even before [Hartman] entered the intersection. A reasonable jury could conclude [Hartman] had a duty to see Trevor and make reasonable efforts to avoid the collision.

*Id.*

Hartman counters that Appellant "could not and did not prove the second element … because there is no evidence whatsoever that [] Hartman breached any duty of care." Hartman's Brief at 7. Hartman cites Trevor's deposition, as well as the expert's report and police report, in emphasizing that the "only evidence of []Hartman's involvement in the accident is that he was lawfully traveling under the 25 mile per hour speed limit on a through street without a stop sign." *Id.* (citations omitted). He states:

> Hartman had nearly cleared the intersection when skateboarding Trevor [] deliberately blew through his stop sign at a reckless rate of speed, and collided into the side of [] Hartman's truck. An engineering expert in collision reconstruction analyzed the video of the accident, and opined that [] Hartman was traveling 24 miles per hour as he traveled through the intersection. Other than their

- 9 -

own speculation as to [] Hartman's speed, Appellant[] failed to produce any evidence or expert report to demonstrate that [] Hartman was traveling faster than the posted speed limit of 25 miles per hour at the time of the accident. The only expert report produced in this case proves that it is uncontradicted that [Hartman] was not speeding, and thus, there is no genuine issue of such material fact to be decided by a factfinder. Furthermore, the weather conditions on the day and time of the accident were dry and clear, and it was daylight, which further establishes that [] Hartman used due care under the circumstances. Moreover, there is no evidence of record to suggest that, at the time of the accident, [] Hartman was distracted or being inattentive in any way.

*Id.* at 7-8 (citations omitted).

As he was driving his truck, Hartman "owe[d] a duty of care to all motorists and pedestrians in his immediate zone of danger." *Wright v. Eastman*, 63 A.3d 281, 284 (Pa. Super. 2013) (citing *Mazzagatti v. Everingham by Everingham,* 516 A.2d 672, 679 (Pa. 1986)). Drivers "owe each other a duty to drive carefully," and must "be able to stop safely within the distance the driver can clearly see." *Davis v. Wright*, 156 A.3d 1261, 1271 (Pa. Super. 2017) (citations omitted). The "mere happening of an accident does not raise an inference or presumption of negligence, nor even make out a *prima facie* case of negligence." *Churilla v. Barner*, 409 A.2d 83, 85 (Pa. Super. 1979) (citations omitted). "Rather, a plaintiff must produce evidence to support his version of the incident; **theories as to what may have transpired … may not be employed as a substitute for such evidence**." *Id.* (emphasis added). Again, the "mere occurrence of an accident does not establish negligent conduct." *Martin v. Evans*, 711 A.2d

458, 461 (Pa. 1998) (citation omitted).  The Pennsylvania Supreme Court has observed:

> While it is the duty of the driver of a motor vehicle at all times to have his car under control, "having one's car under control means having it under such control that it can be stopped before doing injury … in any situation **that is reasonably likely to arise under the circumstances**."  **Galliano v. East Penn Electric Co.**, 154 A. 805, 807 (Pa. 1931) (emphasis supplied).  **See also Reidinger v. Lewis Jones, Inc.**, 45 A.2d 3 (Pa. 1946); **Craig v. Gottlieb**, 55 A.2d 573 (Pa. 1947).  "The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm … resulting from his act…."  **Dahlstrom v. Shrum**, 84 A.2d 289, 290 (Pa. 1951).

**Adley Exp. Co. v. Willard**, 93 A.2d 676, 679 (Pa. 1953).

Here, the trial court found that Appellant "failed to raise a genuine issue of material fact as to the essential element of breach of duty to support a negligence claim."  TCO at 6.  The court explained:

> [Appellant] does not provide any expert reports to support his contention that if [Hartman] had looked to his right, he would have been able to observe Trevor in such a manner as to avoid the collision.  Even if [Appellant] could establish that fact, a fact finder would next have to find that [Hartman], after observing Trevor riding down [the s]treet, had the added duty to anticipate that Trevor would disregard … the [stop] sign and enter the intersection without checking for oncoming traffic.  … Trevor eliminated th[e] issue of fact when he admitted that he never had an intention of slowing down or stopping before entering the intersection.

**Id.** at 5.  The court stated that Hartman "had no duty to look all the way down [the s]treet to observe Trevor speeding toward the intersection and anticipate that he would choose to enter the intersection without using due care."  **Id.** at 6.

- 11 -

The record supports the trial court's conclusion that Appellant failed to produce evidence of Hartman breaching a duty to drive slower, observe Trevor skateboard down the hill, or foresee that Trevor would continue to skateboard through the intersection. **See Shellenberger**, *supra* (stating summary judgment is appropriate if the record "contains insufficient evidence of facts for a *prima facie* cause of action"). As Appellant did not establish a *prima facie* case of negligence, we discern no error.

*2. Recklessness*

In his second issue, Appellant disputes the trial court's finding that even if Hartman was negligent, "the matter is moot because Trevor acted recklessly." TCO at 6. Our Supreme Court has explained:

> Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence. [An] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

***Tayar v. Camelback Ski Corp., Inc.***, 47 A.3d 1190, 1200-01 (Pa. 2012) (quoting Restatement (Second) of Torts § 500 (1965)).

Appellant claims the evidence "did not establish the finding that Trevor … was reckless as a matter of law." Appellant's Brief at 10. Appellant argues:

> [Trevor's] decision to proceed through the stop sign was based upon a belief that he would not encounter any vehicles in a

residential area, not indifference to danger. Both Trevor's and [Hartman's] testimony establish that Trevor actively attempted to avoid harm when he became aware of [Hartman's] vehicle.

*Id.* at 11.

To the contrary, Hartman states that "[b]arreling through an intersection with the intention of 'chancing' an accident is the definition of reckless, willful, and wanton behavior." Hartman's Brief at 10. He emphasizes that a "reckless plaintiff is barred from recovering against an alleged negligent defendant." *Id.* at 12 (citing *Lewis v. Miller*, 543 A.2d 590, 592 (Pa. Super. 1988)).

The trial court cited *Lewis* in concluding that Trevor's recklessness "bars his recovery." TCO at 6. *Lewis* involved "the tragic and fully foreseeable consequences" of drag racing. *Lewis*, 543 A.2d at 590. Two men, Mark Lewis and Brian Charles Miller, agreed to drag race "up a steep hill on U.S. Route 322 in Clarion Township, Clarion County." *Id.* Lewis was ejected from his car and died. *Id.* His estate sued Miller, alleging that the direct and proximate cause of the accident was Miller's "careless, negligent, wanton, reckless grossly negligent" [*sic*] operation of his car. *Id.* at 591. The trial court granted a compulsory nonsuit in favor of Miller. This Court affirmed the nonsuit, stating that we could not "accept as reasonable [the estate's] contention that the evidence could establish the immediate cause of the accident was [Miller's] sudden lane change which forced [Lewis] from the roadway, since that was just one isolated action of the continuing wanton act of drag racing." *Id.* at 592. We also stated that the "trial judge was correct

in his observation that in going 75 m.p.h. in a 45 m.p.h. zone, the men found, as they rounded the curve, precisely what they could have anticipated, that is, a slower moving vehicle." *Id.*

Recently, our Supreme Court discussed *Lewis*, and our determination that "a conscious indifference to one's own safety and to public safety generally barred an individual from recovering for his injuries." *Dinardo v. Kohler*, 304 A.3d 1187, 1201 (Pa. 2023). The Supreme Court observed:

> The [Superior C]ourt explained that the wanton misconduct engaged in by [Lewis] — *i.e.*, participating in a drag race on a dangerous blind curve while intoxicated — barred recovery. In his concurrence, Judge Zoran Popovich went further, expressing his incredulity towards both the plaintiff and his attorney for bringing such a cause of action and scolding [Lewis's] estate for "the unmitigated temerity to demand financial redress for injuries received as a direct consequence of [Lewis's] wanton commission of those crimes. Shall we now award monetary verdicts in civil court to a robber for injuries he received in a thwarted attempt to rob a convenience store?"

*Id.* (citation omitted).

Here, the trial court recognized Trevor's "conscious indifference" to safety. *Id.*; *see* TCO at 6 (stating "it is clear from the evidence of record that Trevor did not enter the intersection with any consideration of due care"). The court explained:

> Trevor admitted that he was aware of the stop sign, that he had no intention of stopping at the stop sign, that he intended to enter the intersection without concern for oncoming traffic, and that he was taking his chances that the intersection would be clear. There is no issue of fact that making such a choice is reckless. He disregarded the rules of the road. He put himself in danger and any potential driver in danger. He was completely indifferent to the consequences that would occur to himself or to others when

- 14 -

he chose to enter the intersection.  Trevor risked his own life, and he selfishly risked the life of [Hartman].  Even if this [c]ourt found that an issue of fact existed as to [Hartman's] negligence, since Trevor himself was engaging in reckless conduct, he is barred from recovery and [Hartman] is entitled to recovery on his counter-claim.

TCO at 6-7.

The record is unequivocal as to Trevor's recklessness.  ***See Tayar***, ***supra*** ("[R]ecklessness requires a conscious action or inaction which creates a substantial risk of harm to others[.]").  Again, we discern no error.

*Costs and Damages*

Hartman has requested costs and damages, including attorneys' fees, pursuant to Pa.R.A.P. 2744 and Pa.R.A.P. 2751.  ***See generally*** Application for Further Costs and Damages, 9/18/24, at 2-9.  Hartman's argument is based on his claim that this appeal is frivolous.  ***Id.***  Hartman contends that Appellant has failed to present "substantive arguments," or "any legal support or factual basis" for the appeal.  ***Id.*** at 8-9.

Appellant first counters that Hartman is not entitled to relief because he failed to comply with Rule 2751's "procedure by which a party may request costs … **after** a final order of the appellate court has been entered."  Answer to Application for Further Costs and Damages, 10/4/24, at 3 (emphasis in original).  Rule 2751 includes the following language:

An application for further costs and damages must be made before the record is remanded, unless the appellate court, for cause shown, shall otherwise direct.  Such an application must set forth specifically the reasons why it should be granted, and shall be accompanied by the opinion of the court and the briefs used therein.

- 15 -

*Id.* (quoting Pa.R.A.P. 2751). Appellant claims the "phrase 'opinion of the court' clearly refers to the appellate court's opinion." *Id.* Appellant recognizes a request for counsel fees in a party's brief may be "sufficient … for counsel fees pursuant to Rule 2744," but notes that Hartman's request filed prior to this Court's disposition, "is not styled as an amendment to his [b]rief." *Id.* at 3-4 (citing *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 878 (Pa. Super. 2006)).

Appellant further argues that even if this Court "ultimately finds Appellant's arguments unpersuasive, … they are not frivolous." *Id.* at 6. Appellant states that his brief "outlines a variety of evidence and/or legal contentions that were either not considered, or were improperly considered, by the trial court in taking away, from jury consideration, the circumstances of this intersection accident." *Id.* at 4. Thus, he asserts his issues "are clearly based in fact and law." *Id.* at 6.

We agree this appeal is not frivolous, regardless of the procedure set forth in Rule 2751. An appellate court may award costs, including counsel fees and damages, "as may be just," if it determines an appeal "is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. An appeal is "frivolous" if the appellate court determines it lacks any basis in law or in fact. *Griffith v. Kirsch*, 886 A.2d 249, 255-56 (Pa. Super. 2005). This "high standard is imposed in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned." *Id.* (citation

- 16 -

omitted). "[S]imply because an appeal lacks merit does not make it frivolous." *Geiger v. Rouse*, 715 A.2d 454, 458 (Pa. Super. 1998). Although Appellant's issues do not merit relief, we cannot conclude they meet the high standard of lacking any basis in law or fact.

*CONCLUSION*

The record confirms Appellant failed "to adduce sufficient evidence on an issue essential to his case." *Shellenberger*, *supra*. As there are no genuine issues of material fact, the trial court did not err in granting summary judgment in favor of Hartman. Although Appellant has not prevailed, the appeal is not frivolous, and Hartman is not entitled to costs and damages.

Order affirmed. Application for costs and damages denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/25/2025